UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ALTOVISE COLLIER and
MELISSA THERMIDOR,

                Plaintiffs,

    - against -

BOYMELGREEN DEVELOPERS, d/b/a
BOYMELGREEN DEVELOPMENT,

                Defendant.
-----------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 8 2008 ★

BROOKLYN OFFICE

06 CV 5425 (SJ)

**MEMORANDUM
AND ORDER**

A P P E A R A N C E S:

THE LAW OFFICE OF TINA KANSAS
305 Broadway, Suite 305
New York, NY 10007
By:    Tina Kansas, Esq.
Attorney for Plaintiffs

SATTERLEE STEPHENS BURKE & BURKE, LLP
230 Park Avenue, Suite 1130
New York, NY 10169
By:    Walter A. Saurack, Esq.
       Zoe E. Jasper, Esq.
Attorneys for Defendant

JOHNSON, Senior District Judge:

      Altovise Collier and Melissa Thermidor ("Plaintiffs") bring this action for

damages arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et*

*seq.* ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law. § 296 *et seq.*,

("NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code § 8-107

("NYCHRL"), and New York common law.  Presently before the Court is a motion

filed by Boymelgreen Developers d/b/a Boymelgreen Development ("Defendant") on

August 16, 2007, to dismiss the Amended Complaint, pursuant to Rule 12(b)(6), for

judgment on the pleadings, pursuant to Rule 12(c), and to strike portions of the

Amended Complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure

("Fed. R. Civ. P.") (the "Motion"; "Second Motion to Dismiss"). Defendant also

moves for sanctions, attorneys' fees, and costs. For the reasons stated below,

Defendant's Motion is GRANTED in part and DENIED in part.

## BACKGROUND

Given that this is the second complaint filed by Plaintiffs in this matter,

familiarity with the facts surrounding the case is assumed.[1] In sum, Plaintiffs, both

African American females, are former employees of Defendant. Thermidor resigned

on December 12, 2004, allegedly due to a hostile and intolerable work environment,

and Collier was terminated on February 9, 2005. Plaintiffs filed separate charges with

the Equal Employment Opportunity Commission ("EEOC") in May 2005.

Thermidor's EEOC complaint alleges hostile work environment and

constructive discharge due to race and gender discrimination. The EEOC issued a

right-to-sue letter to Thermidor on July 5, 2006, without which an employee (or former

employee) can not file suit under Title VII.

Collier's EEOC complaint alleges hostile work environment and wrongful

termination due to race discrimination. The EEOC issued a right-to-sue letter to Collier

---

1 Note that the Plaintiffs are represented by the same attorney, despite the fact that the circumstances
surrounding their various claims are quite distinct.

on December 20, 2006.

October 5, 2006, prior to Plaintiff Collier receiving her right-to-sue letter, Plaintiffs brought this action against Defendant seeking damages pursuant to Title VII, NYSHRL, NYCHRL, and New York common law. Thermidor alleges in the original Complaint that she suffered from a hostile work environment and was constructively discharged due to race and gender discrimination. Collier alleges that she suffered from a hostile work environment and was unlawfully terminated due to race discrimination, and was retaliated against for filing her EEOC complaint.

On November 28, 2006, Defendant filed its first Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which this Court granted in part and denied in part in its Memorandum and Order, dated on May 17, 2007. Thermidor's claims for defamation and for gender discrimination based on denial of maternity leave were dismissed with prejudice. However, her gender discrimination claim arising from alleged sexual harassment by Rotimi Imassuer, a chauffeur apparently employed by Defendant, was dismissed without prejudice. Finally, Thermidor's claims for unlawful termination and hostile work environment due to racial discrimination survived Defendant's initial Motion to Dismiss. Collier's claims, all of which alleged race discrimination, were dismissed without prejudice, leaving open the option of repleading. On June 15, 2007, Plaintiffs filed an Amended Complaint, which was followed by the Defendant's instant Motion on August 16, 2007. Plaintiffs filed their response to the Motion on September 6, 2007, and Defendant replied in further support of its Motion on September 13, 2007.

3

## **STANDARD OF REVIEW**

In considering a motion to dismiss a complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Bolt Elec., Inc. v. City of N.Y., 53 F.3d 465, 469 (2d Cir.1995). Dismissal is appropriate only where it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See id. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support her claims. See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995). A district court must confine its consideration of a motion to dismiss "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991).

Conclusory allegations are insufficient to withstand a motion to dismiss. See Manos v. Geissler, 377 F.Supp.2d 422, 425 (S.D.N.Y.2005). Moreover, courts need not accept as true pleadings expressing legal conclusions, speculation and unsubstantiated allegations "so broad and conclusory as to be meaningless." Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 120 (2d Cir.1982); see also Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir.2002) (while the court must construe factual allegations in the light most favorable to the plaintiff, the court is not required

4

to accept plaintiff's legal conclusions).

## DISCUSSION

### II. PLAINTIFF THERMIDOR

#### A. Gender Discrimination Claims

Defendant alleges that Thermidor's gender discrimination claims should be dismissed as untimely, and for failure to state a claim.

To maintain a timely action under 42 U.S.C. § 2000e-5, a plaintiff must comply with three requirements: (1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue letter, and (3) file an action within 90 days of receipt of that letter. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir.1994). Because New York is a state with a fair employment agency, a charge of discrimination must be filed with the EEOC or the New York State Department of Human Rights within 300 days of the alleged discrimination. See 42 U.S.C. § 2000e-5(e)(1); Harris v. City of N.Y., 186 F.3d 243, 247 n.2 (2d Cir.1999). The 300-day filing requirement functions as a statute of limitations, see Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998), and is strictly construed in this circuit, see, e.g., Trenchfield v. DuPont Photomasks, Inc., No. 96 CIV. 1135, 1997 WL 53238, at *5 -*6 (S.D.N.Y. Feb. 7, 1997) (Title VII claims filed with EEOC 338 days after alleged discriminatory employment practice dismissed as untimely); Van Zant, 80 F.3d at 712-13 (sexual harassment claims

5

dismissed as untimely where last alleged discriminatory act occurred more than 300 days before EEOC filing).

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." See Van Zant, 80 F.3d at 713. Because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" every such act "starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Therefore, each discrete discriminatory act alleged must fall within the 300-day limitations period to be considered timely. See id. at 113.

However, for the purpose of evaluating the timeliness of claims, the U.S. Supreme Court has distinguished discrete discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, from "continuing violations." See Morgan, 536 U.S. at 114-15. Hostile work environment claims are considered continuing violations because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. at 117. For such claims, as long as at least one act contributing to a plaintiff's continuing violation claim occurred less than 300 days prior to the filing of the EEOC charge, the court may consider alleged component acts which occurred outside of the statutory time period for the purpose of determining liability. See id.; see also Cobian v. City of N.Y., No. 04 CIV. 1941, 2006 WL 212292, at *2 n.1 (S.D.N.Y. Jan. 24,

P-049

2006) ("Acts occurring outside the limitations period may be considered in support of continuing violation claims, such as hostile environment claims, where one act contributing to the claim occurred within the limitations period.").

In this case, Thermidor filed her claim with the EEOC on May 31, 2005. Therefore, under the 300-day statute of limitations, only incidents of alleged discrimination occurring on or after August 4, 2004, or incidents that constitute a continuing violation for which at least one alleged act of discrimination occurred on or after August 4, 2004, can be considered in support of her claims.

### 1. Sexual and Gender-Based Harassment/Hostile Work Environment

In her Amended Complaint, Plaintiff Thermidor alleges that she was subjected to ongoing sexual and gender-based harassment at the hands of an employee of Defendant, Rotimi Imassuer, resulting in an intolerable work environment and ultimately contributing to Thermidor's decision to resign from the company. Although she does not specify exact dates, Plaintiff indicates that this harassment began soon after she was hired in August 2003 and continued until her maternity leave in July 2004. See Amend. Compl., ¶ 30. However, Plaintiff also states that, upon her return to work in September 2004, she was "again subjected to Mr. Imassuer's persistent and offensive 'flirtation'..." Amend. Compl., ¶ 33. Moreover, Plaintiff Thermidor goes on to allege that, even after she was transferred to another department in October 2004, Mr. Imassuer's "offensive and inappropriate harassment continued." Amend. Compl., ¶ 34. Although Plaintiff provides little detail regarding the exact nature of her encounters

7

with Mr. Imassuer, she does state that he repeatedly tried to "flirt" with her and ask

questions about her romantic and sexual life that made her "extremely uncomfortable."

Amend. Compl. ¶¶ 29-30.

Viewing these sexual discrimination allegations in the light most favorable to

the plaintiff, and given "Title VII's broad rule of workplace equality," Harris v. Forklift

Systems, Inc., 510 U.S. 17, 22 (1993), the Court finds that Thermidor's gender

discrimination claims are sufficient to survive Defendant's Motion to Dismiss.

Furthermore, the Court finds that Thermidor's allegations of harassment constitute a

"continuous violation" of Title VII. Hence, in determining whether a hostile work

environment did, in fact, exist, the Court (and/or the jury) may consider incidents or

interactions that occurred outside of the 300-day statute of limitations period. See

Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).

With respect to the continuing violation finding, the Second Circuit has

indicated that:

> ...a continuing violation may be found where there is proof of specific
> ongoing discriminatory polices or practices, *or where specific and*
> *related instances of discrimination are permitted by the employer to*
> *continue unremedied for so long as to amount to a discriminatory policy*
> *or practice.* Id. (emphasis added).

Here, Thermidor alleges that the sexual harassment to which she was subjected by Mr.

Imassuer persisted from the time she was hired in August 2003 up until she began her

maternity leave in July 2004, only to resurface after her return to work in September

2004. Amend. Compl. ¶¶ 30, 33. Importantly, Thermidor also states that, on more than

8

one occasion, she informed her supervisor, Ms. Jackie Muriel, of Mr. Imassuer's behavior, but that no steps were taken to alleviate her concerns. Id. Though Plaintiff does not provide the specific dates on which she met with her supervisor to discuss her discomfort with the situation, she clearly suggests that Mr. Imassuer's superiors were aware, or should have been aware, of his actions even prior to the start of Ms. Thermidor's maternity leave in July 2004.

The Court rejects Defendant's argument that Mr. Imassuer's alleged behavior "was not severe and would not be objectionable to a reasonable person." Mem. in Supp. of Mot. to Dismiss, p. 10. While it is true that Title VII was not meant to serve as a "general civility code," and that a single act of flirtation by a male employee toward a female co-worker may be relatively innocuous in some instances, repeated incidents of such behavior present a much different situation, especially where the female employee has consistently rebuffed the advances. In addition, Thermidor's allegations suggest that these incidents of harassment were not sporadic in nature, as Defendant argues. Indeed, Thermidor alleges that she was subjected to Mr. Imassuer's inappropriate behavior at least twice a week during the month of September 2004, totaling at least eight separate incidents during that month alone. Amend. Compl. ¶ 33. It also should be noted that, while the allegations made by Plaintiff do not amount to a sexual assault, such "egregious examples of harassment...do not mark the boundary of what is actionable." Harris, 510 U.S. at 22.

Defendant also argues that Plaintiff Thermidor has not alleged that the

P-049

harassment by Mr. Imassuer affected her conditions of employment. However, in the Court's view, it is significant that Ms. Thermidor found Mr. Imassuer's alleged behavior disturbing enough to raise the issue with her supervisor on at least two occasions. But perhaps even more telling is the fact that, soon after returning from maternity leave, Ms. Thermidor requested a transfer to a new department within the company, due in part to the continued harassment by Mr. Imassuer. Amend. Compl. ¶ 33. These circumstances certainly suggest that the conditions of Ms. Thermidor's employment were negatively affected by what she perceived to be ongoing instances of harassment.

For all these reasons, the Defendant's motion to dismiss on this ground is hereby DENIED.


**B.     Defendant's Request for Sanctions Related to Thermidor's FMLA Claims**

Given that the Court has already dismissed, with prejudice, Plaintiff Thermidor's claims related to her pregnancy and maternity leave, the Court need not revisit this issue. But Defendant requests that it should be "awarded sanctions, attorneys' fees and costs for having to re-address these dismissed claim(s)" Mem. of Law in Supp. of Mot. to Dismiss, p. 17, pursuant to Fed. R. Civ. P. 12(c). The Court interprets Plaintiff's discussion of her pregnancy and maternity leave not as constituting a claim, but rather as a way to place her actual claims in proper context.

10

See Amend. Compl., ¶¶ 31-32. Hence, the Court declines to penalize Plaintiff for including in her Amended Complaint a discussion of facts related to claims that have already been dismissed. Defendant's request is hereby DENIED.

## C.    NYSHRL and NYCHRL Gender Discrimination Claims

The Court's consideration of claims brought under NYSHRL and NYCHRL parallels the analysis used for Title VII claims. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir.2000). However, in contrast to Thermidor's Title VII claim, her claims brought under NYSHRL and NYCHRL are subject to a three-year statute of limitations. See N.Y. CPLR § 214(2) (2004); N.Y.C. Admin. Code § 8-502(d) (2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998).

Thermidor's original Complaint was filed on October 5, 2006. Therefore, any alleged discrimination must have occurred on or after October 5, 2003 to be timely under NYSHRL and NYCHRL. The majority of the incidents alleged by Plaintiff Thermidor necessarily occurred after October 5, 2003, since she did not begin working for Defendant until August 2003. Moreover, for the reasons stated above, the Court finds that the alleged actions by Mr. Imassuer constitute a continuing violation, thus allowing the Court to consider even those events that took place outside of the limitations period.

P-049

## II.    PLAINTIFF COLLIER

### A.    Race Discrimination Claims and Statute of Limitations

Defendant argues that Collier's claims are time-barred, because she did not file her Amended Complaint within 90 days of receipt of the EEOC's right-to-sue letter. It is well-settled that, in most instances, a plaintiff must file a discrimination charge with the EEOC and subsequently receive a right-to-sue letter from the agency prior to bringing a Title VII lawsuit. See, e.g., Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 117 (E.D.N.Y.2003); Habermann v. Brown, Harris, Stevens, Inc., 1994 WL 573290, at *1 (S.D.N.Y.1994) (citing 42 U.S.C. § 2000e-5(f)(1)). Furthermore, a plaintiff must file suit within 90 days of receipt of the right-to-sue letter. 42 U.S.C. § 2000e-5(f). Adherence to the EEOC's procedural requirements serves as "an essential element of Title VII's statutory scheme," and is an element with which defendants are "entitled to insist" that plaintiffs comply. Francis v. City of N.Y., 235 F.3d 763, 768 (2d Cir.2000) (internal quotation omitted).

Here, it is not disputed that Collier filed a charge with the EEOC, which then sent Collier a right-to-sue letter on or about December 20, 2006, a copy of which was served on Defendants on December 30, 2006 and received by the Court via the electronic filing system on January 4, 2007. Assuming Plaintiff Collier actually received the letter from the EEOC on or about December 23, 2006, see Fed. R. Civ. P. 6(e), Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1 (1984), she would have been required to file a complaint no later than March 23, 2007, in order to

12

comply with 90-day time limit articulated in 42 U.S.C. § 2000e-5(f). As noted above, however, Plaintiff's Amended Complaint was not filed until June 15, 2007. Hence, Defendant argues that Collier's Amended Complaint is time-barred.

However, at the point at which Plaintiff Collier received and filed her right-to-sue letter, this Court had yet to decide whether to grant Defendant's initial Motion to Dismiss Collier's original Complaint.[2] The Court did not rule on Defendant's prior Motion to Dismiss until May 17, 2007, nearly two months after the 90-day period had expired, at which time the Court granted the Motion to Dismiss Collier's claims without prejudice to replead within 30 days of the judgment. May 17, 2007 Mem. and Order, p. 17.

By filing her Amended Complaint on June 15, 2007, Collier complied with the Court's order to replead her claims within 30 days of its judgment. In addition, Title VII matters are "remedial in character and should be construed generously to achieve its purposes," Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir. 1972). The Court finds that the doctrine of equitable tolling is applicable in the case at bar. As the Second Circuit has noted, statutes of limitations may be equitably tolled, as a matter of fairness, in those "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.2000), in which a party is "prevented in some

---

[2] The Court notes that Defendant failed to raise this issue in connection with its first motion to dismiss, including submissions it filed with the Court *after* Collier submitted her EEOC right-to-sue letter to the Court on January 4, 2007, but *before* the Court ruled on the first motion to dismiss on May 17, 2007.

P-049

extraordinary way from exercising his rights." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir.1996) (internal quotation marks and alteration omitted); see also Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003). Here, in order for Plaintiff Collier to file suit within 90 days of receiving the right-to-sue letter from the EEOC, she would have had to do so prior to this Court's ruling on Defendant's initial Motion to Dismiss. Hence, for reasons of both fairness and efficiency, Defendant's motion to dismiss on this ground is denied.

### B.    Unlawful Retaliation Claims

Plaintiff Collier maintains in her Amended Complaint that Defendant retaliated against her for "filing a complaint with the EEOC," in violation of Title VII. Amend. Compl. ¶ 25. Specifically, Collier alleges that "[u]pon information and belief, defendant provided false information to the [New York State] Department of Labor so that she could not receive unemployment benefits…" Id. Collier further alleges that Defendant contacted a headhunter who was attempting to assist Plaintiff in securing new employment and "threatened her to prevent her from helping plaintiff get another job." Amend. Compl. ¶ 26. Finally, Collier alleges that, approximately two months after being hired by a real estate company that did business with Defendant, she was terminated because "defendant had called that company and pressured them into firing her," also in retaliation for the EEOC complaint.

Based on these allegations, and the previously stated facts of the case, the Court

P-049

finds that Plaintiff Collier's retaliation claims must be dismissed with prejudice.[3] First, as noted above, conclusory allegations, such as those made by Collier here, are insufficient to withstand a motion to dismiss. See Manos v. Geissler, 377 F.Supp.2d 422, 425 (S.D.N.Y.2005). Plaintiff provides no indication as to the circumstances surrounding these allegations (i.e. dates and times of the alleged retaliatory actions of Defendant, the particular person or people responsible, etc.). Rather, Plaintiff is simply surmising that Defendant took steps to prevent her from acquiring and retaining new employment.

Second, and perhaps more importantly, Plaintiff Collier's EEOC claims were filed well after she was terminated in February 2005. Hence, it is impossible for Defendant to have fired Collier in retaliation for filing her complaint. Although Collier alleges that she initially contacted the EEOC in January 2005, prior to being fired, it is undisputed that Collier's EEOC complaint was not officially filed until May 9, 2005. See Mem. of Law in Opp. to Mot. to Dismiss, pp. 2-3. Collier fails to explain how her employer knew, or could have known, that she had contacted the EEOC prior to being fired. Without such knowledge, Defendant could not have fired Collier in retaliation for contacting the EEOC in January 2005. See Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199, 205-206 (2d Cir. 2006).

Timing issues notwithstanding, Collier also failed to allege her retaliation

---

3 Having granted Defendant's Fed. R. Civ. P. 12(b)(6) motion with respect to Plaintiff Collier's retaliation claims, the Court need not address the merits of Defendant's Fed. R. Civ. P. 12(c) argument on this issue.

P-049

claims in her EEOC charge, despite the fact that she presumably was aware of the alleged retaliatory tactics at the time she filed her official charge with the EEOC in May 2005. Hence, this Court may only hear these claims if they are determined to be "reasonably related" to the EEOC's investigation of the underlying charges. See Butts v. City of New York Dept. of Housing, 990 F.2d 1397 (2d Cir. 1993).[4] Plaintiff argues that her retaliation claim falls "within the reasonable scope of the EEOC investigation" and, in the alternative, that her claim does, in fact, allege retaliation for filing the EEOC charge. See Mem. of Law in Opp. to Mot. to Dismiss, p. 10. However, as noted above, Plaintiff's retaliation claims, whether reasonably related or not, are without merit given that most, if not all, of the alleged acts of retaliation took place *before* Collier filed her charge with the EEOC in May 2005. Hence, for the reasons stated above, the Defendant's motion to dismiss is GRANTED, with prejudice, regarding Plaintiff's retaliation claims.

### C. Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must show that harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello,

---

4Under Butts, claims not alleged in the plaintiff's charge to the EEOC will only be addressed by the district court: 1) where the claim brought in the civil action concerns conduct which would fall within the reasonable scope of the instant EEOC investigation; 2) where the claim alleges retaliation for filing the EEOC charge; or 3) where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. See Butts, 990 F.2d at 1402-1403.

P-049

294 F.3d 365, 373 (2d Cir.2002) (internal quotation omitted); see also Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment") (internal quotation omitted). To be actionable, a racially hostile environment must be both objectively and subjectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Morgan, 536 U.S. at 116. "As a general rule, incidents must be more than episodic, they must be sufficiently continuous and concerted in order to be deemed pervasive." Alfano, 294 F.3d at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.1997)).

In the case at bar, Defendant argues that "Collier fails to allege any facts that show how this alleged harassment was related to her race," and that Plaintiff merely "offers the conclusory assertion...that one of her supervisors did not like minorities." Mem. in Supp. of Mot. to Dismiss, p. 13. The Court disagrees. While it is true that the

17

Amended Complaint includes discussion of incidents that have no ostensible connection to Collier's race, it is certainly true that the public use of racially derogatory terms, particularly by a supervisor, could interfere unreasonably with an employee's work performance. See Amend. Compl., ¶ 17. Moreover, Plaintiff suggests that the supervisor in question, Mr. Vraneski, made such statements on more than one occasion. Id. The Court also notes that Mr. Vraneski allegedly "announced to another employee that he did not want minorities in the company." Amend. Compl., ¶ 13. Given the history and sensitive nature of race relations in this country, such remarks can prove toxic to any work environment and cause among employees of color the kind of "intimidation, ridicule, and insult" that the Title VII provisions are meant to address. See Griggs v. Duke Power Co., 401 U.S. 424, 429-430 (1971) ("The objective of Congress in the enactment of Title VII…was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."); see also Cynthia E. Nance, "Colorable Claims: The Continuing Significance of Color Under Title VII Forty Years After Its Passage," 26 Berkeley J. Emp. & Lab. L. 435, 462 (2005) (discussing the policy reasons for prohibiting employment discrimination, the author points out that "[t]he color provisions of Title VII recognize a history of racism and the continuing effects of that history."); see also Tam B. Tran, "Title VII Hostile Work Environment: A Different Perspective," 9 J. Contemp. Legal Issues 357, 369 (1998) (referencing Harris v. International Paper Co., 765 F.Supp. 1509 (D. Maine 1991), the author notes

18

that "African-Americans regularly encounter negative racial attitudes due to society's ingrained notions of racial stereotypes, race-based beliefs and preferences.") Hence, the Court further finds that such remarks are objectively offensive and that Plaintiff Collier has demonstrated through her complaint that her supervisor's alleged comments were subjectively offensive as well.

Although many of Plaintiff's other allegations, involving various confrontations with Mr. Vraneski and another employee, Ms. Altina Klapija, do not reference racial discrimination explicitly, the Court considers, as noted above, all the circumstances involved when determining whether a viable hostile work environment claim exists. In light of the alleged race-related statements made by Mr. Vraneski, and the contempt that he allegedly expressed for people of color, all of which the Court accepts as true for the purposes of deciding this Motion to Dismiss, it is not unreasonable to assume that Mr. Vraneski's other alleged altercations with Plaintiffs Collier and Thermidor (the only African American employees on staff) were informed by racial animus and further contributed to the level of discomfort felt by Plaintiff. For these reasons, Defendant's motion to dismiss Plaintiff Collier's hostile work environment claim is denied.

### D. Unlawful Termination on the Basis of Race

Defendant asserts that Plaintiff Collier has failed to plead factual allegations sufficient to support her claim of unlawful termination under Title VII. The Court agrees. "To state a claim under Title VII for unlawful termination, a plaintiff must

allege that: (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Harper v. Hunter College, 1998 U.S. App. LEXIS 22580 *3 (2d Cir. 1998); See McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

Collier has satisfied prongs (1) and (3) of this standard, and could make the case, given the circumstances discussed in relation to her hostile work environment claim, that she has satisfied prong (4) as well. However, Plaintiff fails to allege that her job performance was satisfactory at the time of her termination. Although Collier does note that "[b]etween January and September 2004, she received favorable performance reviews, constant positive feedback from the other employees and managerial staff, and was given two raises," Amend. Compl., ¶ 12, she does not address the nature of her performance from September 2004 to her termination in February 2005. Rather, she suggests that the emergence of any issues related to her performance coincided with the arrival of her supervisor, Mr. Vraneski, and co-woker, Ms. Klapija, in September 2004, who "almost immediately began a campaign of harassment designed to get rid of plaintiff." Amend. Compl., ¶ 13. Collier goes on to note that she was informed that she was being fired due to "tardiness and poor performance, neither of which was true." Amend. Compl., ¶ 24. However, Collier fails to refute in any substantive way the notion that her performance was unsatisfactory during the relevant timeframe. Hence, Defendant's Motion to Dismiss Collier's unlawful termination claim is hereby

20

GRANTED.

### E.     Defamation

Under New York law, causes of action sounding in defamation must be commenced in federal court within one year of the utterance or published statement in question. New York Civil Practice Law and Rules § 215(3); Duran v. Jamaica Hospital & Joseph Detoma, 216 F.Supp.2d 63, 66-67 (E.D.N.Y. 2002). "Federal courts apply state statutes of limitations to intentional tort claims such as slander." Id, at 66. This point is reinforced by the United States Supreme Court, which has held that, if there exists no explicit federal provision or conflicting policy concern underlying a pendant state claim, federal courts are to apply the statute of limitations dictated by the relevant state statute. Johnson v. Railway Express Agency, 421 U.S. 454, 465 (1975).

Moreover, although district courts within the Second Circuit are split on the issue, the weight of precedent, particularly within the Eastern District of New York, suggests that the statute of limitations on such a state law claim is not tolled during the pendency of an EEOC claim. See Callahan v. The Image Bank, 184 F.Supp.2d 362, 363 (S.D.N.Y. 2002); see also Lamb v. Citibank, N.A., 1994 U.S. Dist. LEXIS 12903, No. 93 Civ. 2358, 1994 WL 497275, at *8 (S.D.N.Y. Sept. 12, 1994) (refusing to toll the one-year statute of limitations for pendency of EEOC and NYSHRL proceedings); Taylor v. Levine, 1985 U.S. Dist. LEXIS 23503, No. 83 Civ. 4297, 1985 WL 3406, at *2 (E.D.N.Y. Jan 11, 1985) (refusing to toll one-year statute of limitations for pendent

21

state claim for defamation despite timely filing with the EEOC); <u>Gardner v. St. Bonaventure Univ., 171 F. Supp. 2d 118, 131 (W.D.N.Y. 2001)</u> (refusing to toll the statute of limitations for state law claims during pendency of EEOC proceeding); <u>Stordeur v. Computer Association Int'l, Inc., 995 F. Supp. 94, 99 (E.D.N.Y. 1998)</u> (same). <u>But see</u> <u>Forbes v. Merrill Lynch, Fenner & Smith, Inc.</u>, 957 F. Supp. 450, 456 (S.D.N.Y. 1997) (holding that intentional infliction of emotional distress claim was tolled during the time a claim was filed with EEOC until the time that the EEOC gave plaintiff a right-to-sue letter); <u>Anderson v. Yarp Restaurant, Inc.</u>, 1996 U.S. Dist. LEXIS 6898, No. 94- CV-7543, 1996 WL 271891, at *2 (S.D.N.Y. May 21, 1996) (finding statute of limitations tolled during pendency of EEOC complaint involving allegations of sexual harassment); <u>Brown v. Bronx Cross County Medical Group</u>, 834 F. Supp. 105, 111 (S.D.N.Y.1993) (reasoning that not tolling statute of limitations while EEOC complaint was pending forces plaintiffs to pursue state claims in separate action resulting in judicial inefficiency and undermining purpose behind Title VII of resolving disputes prior to litigation).

In the case at bar, Plaintiff Collier alleges that Mr. Vraneski and Ms. Klapija made various false and insulting public statements about her. However, Collier's allegations suggest that all of these statements were made during her employment with Defendant, which ended in February 2005. Collier did not file her original Complaint until October 2006, more than 20 months after the alleged statements were made. In light of the weight of the precedent noted above, it is of no moment that Plaintiff was

required to wait until the EEOC completed its investigation and issued a right-to-sue letter before filing her complaint in federal court.[5] Defendant's motion to dismiss Plaintiff Collier's defamation claims is hereby GRANTED.

## III.   IMPERTINENT, IMMATERIAL AND/OR SCANDALOUS MATTERS

### A.   Paragraphs 4 and 5 of the Amended Complaint

Defendant requests that the Court strike from the record those portions of the Amended Complaint that make reference to the efforts at conciliation in which the parties engaged while the plaintiffs' claims were being considered by the EEOC. Although the plaintiffs maintain that the allusions to conciliation in paragraphs 4 and 5 of the Amended Complaint were not meant to show fault, the fact remains that, under Fed. R. Civ. P. 12(f) ("Rule 12(f)") and Federal Rule of Evidence 408, the Court may strike such statements as immaterial and/or prejudicial if those statements would be inadmissible at trial. See Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976); Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992). Defendant's request is GRANTED and those portions of paragraphs 4 and 5 of the Amended Complaint are hereby stricken from the record.

### B.   Paragraphs 14 and 15 of the Amended Complaint

Defendant also requests that paragraphs 14 and 15 of the Amended Complaint

---

5 Indeed, even while the EEOC investigation was pending, Plaintiff had the option of filing suit in state court with respect to her defamation claims, which would have enabled her to do so within the limitations period.

P-049

be stricken, pursuant to Rule 12(f), because the allegations contained therein "serve no purpose but to inflame the reader." Mem. of Law in Supp. of Mot. to Dismiss, p. 19. Defendant further argues that any mention of the alleged assault by Ms. Klapija on Plaintiff Collier is immaterial given that Plaintiff has not alleged that the assault was motivated by discriminatory animus, thereby rendering the assault not actionable under Title VII. Id. Plaintiff responds by noting, *inter alia*, that the circumstances surrounding the alleged assault "provide the factual background to both the beginning of the racial harassment and the defamation to which plaintiff Collier was subjected to for the next six months..." Mem. of Law in Opp. to Mot. to Dismiss, p. 15.

Notwithstanding the Court's previous ruling in favor of Defendant, it is well-settled that "Rule 12(f) motions are not favored and will not be granted unless it is clear that the allegations in question have no possible bearing on the subject matter of the litigation." Rosenberg v. New York State Office of Temporary and Disability Assistance, 2004 U.S. Dist. LEXIS 25809, *11 (N.D.N.Y. 2004) (internal quotations omitted); see also Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984) (vacated on other grounds). Moreover, such motions are left entirely to the court's discretion. See Morse v. Weingarten, 777 F.Supp. 312, 319 (S.D.N.Y. 1991).

To the extent that the allegations contained in paragraphs 14 and 15 of the Amended Complaint are tied to Plaintiff Collier's hostile work environment claim[6], the

---

6 The Court interprets the account of the events described in paragraphs 14 and 15 of the Amended Complaint as part of Plaintiff's description of the ongoing harassment to which she was subjected as an employee of Defendant. Consistent with the Court's earlier discussion, these allegations of harassment

24

Court denies Defendant's request to strike this language from the record. As noted *supra*, in evaluating hostile work environment claims, the Court considers all the circumstances, including "whether [the alleged harassment] is physically threatening or humiliating,…and whether it unreasonably interferes with an employee's work performance." Morgan, 536 U.S. at 116. In light of the discriminatory comments allegedly made by Mr. Vraneski just prior to the confrontation between Plaintiff and Ms. Klapija (i.e. that he intended to get rid of minorities working for the company), and Plaintiff's assertion that Ms. Klapija expressed agreement with Mr. Vraneski's sentiments, it can hardly be said that the alleged assault may not be considered by the Court in determining whether or not a hostile work environment did, in fact, exist. Hence, paragraphs 14 and 15 of the Amended Complaint shall not be stricken from the record. Defendant's request is DENIED.

### C. Paragraphs 29-32, 37, and 44 of the Amended Complaint

Defendant seeks to have paragraphs 29-32 stricken from the record, pursuant to the doctrine of *res judicata*, based on Defendant's view that Plaintiff is attempting to re-litigate issues that were decided by the Court in its previous Order dated May 17, 2007. Specifically, Defendant characterizes paragraphs 29-32 as an effort by Plaintiff Thermidor to revive "heretofore dismissed pregnancy, gender, and FMLA claims." Mem. in Supp. of Mot. to Dismiss, p. 20. As noted in the discussion above regarding

---

are relevant to whether or not Plaintiff has a viable hostile work environment claim.

Defendant's request for sanctions, the Court does not view these statements as a renewed application for relief, but rather as a way to place the allegations in context. However, the Court does find that paragraph 31, which discusses exclusively the events surrounding Plaintiff's request for maternity leave, is irrelevant with respect to the claims at issue in this case. Therefore, paragraph 31 of the Amended Complaint is hereby stricken from the record pursuant to Rule 12(f).

Defendant also contends that paragraph 37 of the Amended Complaint should be stricken as immaterial, given that Plaintiff Collier has never alleged that she was the target of gender-based discrimination or harassment. The Court agrees. To the extent that paragraph 37 implies that both plaintiffs alleged sexual harassment, the language therein is hereby stricken from the record.

Finally, Defendant asks the Court to strike paragraph 42 of the Amended Complaint, which reads, in its entirety: "As a result of her termination, plaintiff MELISSA THERMIDOR has suffered emotional distress and mental anguish." Amend. Compl., ¶ 42. In making its argument, Defendant points out that "it is indisputably established that Thermidor quit her job, she was not terminated." Mem. of Law in Supp. of Mot. to Dismiss, p. 20. The Court agrees that the reference to Plaintiff Thermidor's "termination" in paragraph 42 should be stricken, as the language is potentially prejudicial to Defendant and inconsistent with the Court's previous ruling. Although, in its May 17, 2007 Order, the Court did find in favor of Plaintiff Thermidor with respect to her constructive discharge claim, there is a distinction between that

phenomenon and termination.[7] The reference to "termination" in paragraph 42 is hereby stricken from the record.

## **CONCLUSION**

In summary, and based on the foregoing, the Court concludes as follows:

1) Plaintiff Thermidor's gender discrimination claims survive Defendant's Second Motion to Dismiss;

2) Plaintiff Collier's:

(A) race discrimination claims are not time-barred and therefore survive Defendant's Second Motion to Dismiss on grounds of untimeliness;

(B) retaliation claims are dismissed with prejudice;

(C) hostile work environment claims survive Defendant's Second Motion to Dismiss;

(D) unlawful termination claims are dismissed with prejudice;

(E) defamation claims are dismissed with prejudice;

3) Defendant's request for sanctions, attorney's fees, and costs is denied;

4) Defendant's request to strike paragraphs 4 and 5 of the Amended Complaint is granted;

---

7 Constructive discharge of an employee occurs when "an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Chertkova v. Conn. General Life Ins. Co., 92 F.3d 81, 89 (2d Cir.1996) (internal citations and quotations omitted).

5) Defendant's request to strike paragraphs 14 and 15 of the Amended Complaint is denied;

6) Defendant's request to strike paragraphs 29-32 of the Amended Complaint is denied, except with respect to paragraph 31, which is stricken from the record;

7) Defendant's request to strike paragraph 37 of the Amended Complaint is granted; and

8) Defendant's request to strike paragraph 42 of the Amended Complaint is granted.


      SO ORDERED.

                                               s/b Judge Johnson

DATED:        March 24 , 2008
                     Brooklyn, New York         Senior U.S.D.J.